## Jasinnas v. Montesano

C.P. of Delaware County, no. 97-13124.

*John A. Prodoehl Jr.,* for plaintiff.
*Jo Ann P. Kelton,* for defendant.

KENNEY SR., *J.,* July 28, 2004—This matter has come before the court in connection with plaintiff/mother's petition for special relief seeking enforcement of a property settlement agreement entered into between the parties which requires each to contribute to the cost of a child's post-secondary education. Father appeals the order of this court dated April 22, 2004, enforcing the provisions of the agreement and requiring rather to pay a portion of the post-secondary education expenses of Paul Montesano Jr. (Son) in accordance therewith.

## FACTUAL BACKGROUND

The parties hereto are the natural parents of a son, Paul Montesano Jr., who, at the time of the hearing of this

matter, was completing his high school education and preparing to undertake his post-secondary education.

In connection with their divorce, the parties entered into a property settlement agreement which, at paragraph nine thereof, made provision for the payment of their children's post-secondary educations, as follows:

"(9) *Higher education expenses of children*

"Husband and wife agree to share financial responsibility in proportion to their respective incomes (both passive and active) for the reasonable cost of education. For purposes of this paragraph, the 'costs of education' are defined as application fees or deposits, other required activity and examination fees, tuitions, books, room, board, transportation and any other required charge made by the educational institution. Husband and wife shall, prior to making any decision as to the enrollment of the children in any particular institution, give consideration to:

"(a) the recommendation of relevant educators;

"(b) the wishes and needs of the children;

"(c) the academic program requirement;

"(d) the cost of education involved;

"(e) the ability or desirability of the children to contribute toward said cost; and

"(f) any other relevant factor.

"Husband and wife, in granting final approval as to the cost of education, including the selection of the education institution, shall also take into account the trans-

portation expenses, if any, likely to be incurred and may appropriately consider these expenses as part of the cost of education.

"Husband's obligation under this paragraph is conditioned upon his being consulted with respect to the choice of educational institution and his approval thereof obtained, however, that his approval shall not be unreasonably withheld and also that said child has not been emancipated."

The parties, accordingly, clearly contemplated that their children would attend college, and that they would contribute to the cost of their educations. They, further, defined "costs" broadly.

They also required consideration of the desires of the children, availability of programs consistent with the children's goals, and the possibility of savings to be afforded by attendance at a school not necessitating costs of transportation.

They also provided that neither would withhold his or her approval unreasonably.

At the time of the hearings, Father was earning approximately $80,000 per year. (4/22/04 N.T. at 17.) Moreover, Father acknowledges that this is approximately twice what Mother earns. (4/13/04 N.T. at 29.)

Father claims that Mother and Son failed to consult with him in connection with the selection of a school, and that the cost of the university in which Son has enrolled is unreasonable.

The court found both arguments to be without merit.

Son desires to pursue a career in mechanical engineering. (4/22/04 N.T. at 23.) Accordingly, he investigated the program at Drexel University.

Father admits that Son communicated to him his interest in Drexel University in December of 2003. (4/13/04 N.T. at 11 and 4/22/04 N.T. at 11.) He admits, also, that he spoke with Son about the application process and financial aid situation on a number of occasions thereafter. (4/22/04 N.T. at 21.) He admits, also, that he never spoke with Mother about the process (4/13/04 N.T. at 14) and that he made absolutely no investigation of the merits of Drexel University or of alternate universities which might have been suitable given Son's career choice. (4/22/04 N.T. at 14.) He did have a vague understanding that West Chester University and Shippensburg University might be less expensive. He made no investigation, however, with respect to whether either offered a mechanical engineering program. Son testified that they do not. (4/22/04 N.T. at 23.)

Father also undertook no role in consideration of the means by which Son's education might be financed, choosing, instead, to leave those matters to Mother and Son. He did not testify to even a single occasion on which he attempted to consult with Mother, although he admitted to talking about it periodically with Son.

Mother, for her part, attempted to telephone Father to involve him in the process, and handed him literature related to his son's tentative enrollment at Drexel on January 7, 2004. (4/13/04 N.T. at 16.) Mother also invited Father to an open house at Drexel. (4/13/04 N.T. at 14.)

Son also appeared at the hearing on April 22, 2004, and testified that he spoke with Father as the application and enrollment processes unfolded.

Father, clearly, therefore, chose not to involve himself in the application process or involve himself in any meaningful consultation with Mother or Son. He, instead, has simply responded by saying that he can't afford to pay for Son's education at Drexel. (4/13/04 N.T. at 20.)

He does acknowledge a responsibility to contribute, saying:

"I'm not saying I do not want to share responsibility of a college, but I would've liked to been consulted about things that were taking place in this college that she says she consulted me on and she has never consulted me on." (4/13/04 N.T, at 26.)

He also testified that he didn't object to Son's attending Drexel. (4/13/04 N.T. at 27.) He simply felt he couldn't afford 65 percent of the cost.

He proposed, instead, that he would contribute 1/3 of the cost of a less expensive school, on the basis that he, Son, and Mother would contribute equally. (4/13/04 N.T. at 28.) That, he felt, was reasonable even though Son had no income and he makes twice what Mother does.

The court thereupon scheduled a second hearing to hear from Son, and, in the interim period, Mother sent Father a proposal that the matter be resolved by Son's being responsible for 1/3, that she would be responsible for one-half of the remaining 2/3, and that Father would be responsible for the rest. (4/22/04 N.T. at 4.)

Father made no response.

He, instead, reaffirmed his position at the second hearing, saying:

"Let it be known to this courtroom I will not deprive my children of a college education, but I must be consulted with. It must be reasonable, affordable, and not cause undue financial hardship. I cannot afford the cost of this educational institution, therefore my approval is not forthcoming." (4/22/04 N.T. at 8.)

He made no showing, however, with respect to the amount of his savings, of his expenses, of the amount he could contribute, or of his inability to contribute the amount being proposed.

Moreover, although continuing to insist that he be consulted, he made no further inquiries or efforts in the interim, and made no effort to consult with Mother or Son, but, instead, simply withheld his approval.

He admitted, in fact, that he still didn't know the cost of Son's education at Drexel. (4/22/04 N.T. at 12.) He also admitted that his vague impression of the cost at West Chester University didn't include the cost of room or board, and that he didn't know the amount of those costs. (4/22/04 N.T. at 20 and 21.)

Son appeared and testified that he wished to attend Drexel in that it was convenient to his home, in that it had the program he wanted, and that Drexel had given him a certain amount of security by admitting him under its early acceptance program. (4/22/04 N.T. at 27.) He testified, also, that due to the difficulty of the program, Drexel has a high dropout rate, and that he, therefore,

felt he would be better able to address his studies by living on campus. (4/22/04 N.T at 35.) He noted, also, that it would be more difficult for him to meet the academic burden if he were forced to work in order to pay his proposed 1/3 of the cost. (4/22/04 N.T. at 36.)

He, nonetheless, made that offer in order to make the cost more bearable for his parents.

The court, accordingly, entered an order accepting Son's proposal, thereby imposing on Father the obligation to pay 1/3 of the cost instead of 2/3 of the cost as is provided in the agreement.

In so doing, it concluded that the resulting cost to Father was reasonable.

It also concluded that Father's motivation in withholding approval was based upon a desire to reduce the cost to him and not upon any inability to be a part of the process, or any consideration relating to the institution itself.

While, as Father contends, the agreement required Mother to consult with him, it also required him to take an active role in the process. He will not be permitted to avoid his responsibilities when he demonstrated no interest in participating in consultations and took essentially no part in the process.

On the contrary, the agreement specifically provided that Father's approval "shall not be unreasonably withheld."

Here, Father clearly withheld his approval unreasonably when, by his choice, he took no part in the applica-

tion or financial aid process, when he refused to consult with Mother, when he made no investigation of programs suitable to Son's needs, and when he made no investigation of the cost of the various institutions or of how the cost might be met.

The court, accordingly, entered an order for one academic year, requiring Father to pay the sum of $13,126, representing 1/3 of the cost, and, in fact, making Father's obligation more reasonable by directing him to pay a sum which is substantially less than that which Father agreed to pay.

## DISCUSSION

(A) Father raises the following matters on appeal:

(1) *The court abused its discretion and erred as a matter of law by failing to grant defendant's petition for reconsideration.*

That petition alleged that the property settlement agreement should not be enforced in that Father claims that he was not consulted in connection with the choice of school and application for financial aid, in that, when he did learn of the application, he believed that his son was applying for a Reserve Officers' Training Corps (ROTC) scholarship, in that he claims that Mother did not furnish the court with her financial information at the hearing, and in that Father has other expenses relating to the support of his children.

As noted, the court found these arguments to be without merit.

Father was clearly apprised of the application process by both Mother and Son, and made no effort to be a part of it, or consult with the others. He, therefore, may not be heard to complain that he was excluded from the process. He had an obligation to be proactive and to act reasonably in the giving or withholding of his approval. His decision was not reasonable when he declined to look into the matter or consult with the others.

Father is, similarly, not entitled to avoid his obligation to Son, or withhold his approval, because of a failed attempt by Son to obtain assistance from ROTC. Son, in applying for ROTC and other financial assistance, fulfilled his obligation to attempt to lesson the cost. He did all that could have been done, and all that the agreement required.

Father's claim that Mother failed to furnish him with financial information at the hearing is also without merit.

Firstly, Father, himself, testified that he earned twice what Mother does.

Secondly, apparently secure in that knowledge, he made no request for further information.

Finally, Father's expenses relating to other children are simply irrelevant and immaterial under the agreement. In any event, Mother has similar expenses.

Father also makes a series of allegations that the court failed to consider certain facts he deems to be relevant and material to the issues before the court:

(2) *The court erred in failing to consider testimony by Father that he informed his son that, based on his sal-*

*ary, he could only afford tuition at a state school with a tuition range of $13,000 to $14,000, and could not afford a private school.*

The court finds this claim to be without merit for the reasons set forth hereinbefore.

It assuredly did consider Father's testimony that he couldn't afford the cost of Drexel University.

(3) *The court erred in failing to consider testimony by Father that his son told him he had applied to the ROTC program at Drexel University in an effort to have tuition paid for by the program.*

(4) *The court erred in failing to consider testimony by Father that he did not learn that his son had not been accepted into the ROTC program at Drexel University until his daughter told him so in December of 2003.*

The court did not fail to consider this testimony. The facts asserted are simply not dispositive of the parties' rights and responsibilities.

(5) *The court erred in failing to consider testimony by Father that he frequently requested updates from his son concerning college selection, and that he was misinformed by his son with respect to the application process.*

Simply put, Father offered no such testimony. He generally testified, on the contrary, that he was essentially uninvolved in the process, and his uninvolvement was apparent to the court.

(6) *The court erred in failing to consider that Mother testified that she received financial aid information from*

*Drexel University on March 17, 2004, and then filed her petition for special relief with the court on March 29, 2004.*

This argument is irrelevant and immaterial, and is not supported by the record.

(7) *The court erred in failing to consider the fact that Mother produced financial aid information from Drexel University to Father for the first time at the hearing of April 13, 2004.*

As discussed hereinbefore, this argument, if true, is of little or no weight. Father knew Son wished to attend Drexel. Father made no effort to investigate the cost of Drexel or how it might be paid when this information was freely available to him, either from the institution, or from Son. He made no request of Mother, and, in any event, she had no greater obligation to transmit this information than he had to obtain it for himself.

(8) *The court failed to consider the fact that Drexel University only considered the prospective student's household income when determining an amount of financial aid and failed to consider his income.*

No such evidence was introduced at the hearing.

(9) *The court erred in failing to consider Father's testimony that, if he had known of his son's acceptance to Drexel without admission to the ROTC program, he would have insisted that Son apply to other schools which were more affordable.*

Father gave no such testimony.

Father, moreover, having made no investigation himself, offers no suggestion what more suitable arrangement might have been found, or its cost, nor, for that matter, whether its cost is more or less than the compromise amount he has been ordered to pay.

(10) *The court abused its discretion and erred as a matter of law in not finding that Mother had violated various provisions of 23 Pa.C.S. §4327 respecting postsecondary educational costs.*

Father's reliance upon 23 Pa.C.S. §4327 is misplaced.

Section 4327 expressly provides that: "the court may order either or both parents who are separated, divorced, unmarried or otherwise subject to an existing support obligation to provide equitably for educational costs of their child . . . ." 23 Pa.C.S. §4327(a).

Accordingly, by its express language, section 4327 is applicable to actions brought for support, and has no application here.

Mother's petition, on the contrary, has been brought to enforce a property settlement agreement entered into in the context of a divorce action, and, accordingly, the parties' rights and responsibilities are to be determined pursuant to the law of contract.

## CONCLUSION

For all of the foregoing reasons, the court submits that the provisions of the property settlement agreement between the parties respecting payment for the post-secondary education of Paul Montesano Jr., ought to be enforced, and its order of April 22, 2004, affirmed.